95 N.J. Super. 25 (1967)
229 A.2d 804
STATE OF NEW JERSEY, ACTING BY AND THROUGH ROBERT A. ROE, COMMISSIONER, ETC., PLAINTIFF-APPELLANT,
v.
WEMROCK ORCHARDS, INC., A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT, AND NEW JERSEY BELL TELEPHONE CO., ETC., ET AL., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 13, 1967.
Decided May 4, 1967.
*27 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Henry Sevrin, Deputy Attorney General, argued the cause for appellant (Mr. Arthur J. Sills, Attorney General, attorney).
Mr. Robert V. Carton argued the cause for respondent (Messrs. Carton, Nary, Witt & Arvanitis, attorneys).
The opinion of the court was delivered by KILKENNY, J.A.D.
The State of New Jersey, Department of Conservation and Economic Development, appeals from an order denying its motion for a new trial, and from the final judgment of the Law Division, based upon the verdict of the jury, awarding defendant property owner, Wemrock Orchards, Inc., $450,000 for so-called parcel 2, acquired *28 by the State through condemnation proceedings under its "Green Acres" program.
The State condemned two parcels owned by Wemrock Orchards, Inc., and located in the Townships of Manalapan and Freehold, in Monmouth County. Parcel 1 consisted of 12.972 acres for which, with the improvements thereon, the jury awarded $37,000. Neither side challenges the propriety of that award. Parcel 2 consists of 174.618 acres of unimproved land upon which there were some apple trees. The jury fixed the value of this larger parcel at $450,000.
In its motion for a new trial the State contended, as it does here, that this verdict as to parcel 2 was contrary to the weight of the evidence, grossly excessive, inconsistent on its face with the evidence, and based on mistake, partiality, prejudice or passion. Unquestionably, if the verdict herein was so tainted, the trial court should have set it aside and ordered a new trial  and so should we, if the trial court erred in failing to do so. R.R. 1:5-3(a); R.R. 2:5; R.R. 4:61-1 (a).
The State relies essentially upon the fact that the award of $450,000 was more than $100,000 in excess of the highest appraisal of the value of parcel 2 as testified to by all four real estate appraisal experts who appeared at the trial. The trial record clearly supports this assertion. The State's two expert witnesses, Cornelius Guiney, Jr. and Ben Alpern, appraised parcel 2 at $191,301 and $200,000 respectively. Wemrock's two experts, Kenneth Walker and F. Leroy Garrabrant, set its value at $300,000 and $349,200 respectively. Thus, the highest value placed upon this acreage by any of the four expert witnesses  and that was by the property owner's expert  was more than $100,000 less than that fixed by the jury.
All four experts used only the "comparable sales" approach in arriving at a per acre valuation and ultimate opinion as to parcel 2. Obviously, the other two common valuation methods  reproduction cost less depreciation and capitalization of net income  were not appropriate herein *29 or employed. Based solely, therefore, on alleged comparable sales, Guiney's per acre valuation was $1,100; Alpern's, $1,150; Walker's, $1,700; and Garrabrant's, $2,000. All experts agreed that the highest and best use of this property economically was for residential development purposes. The land had been used for an apple orchard, but most of it had been cleared. A 100-foot-wide railroad right of way traverses the property near the road frontage.
In denying the State's motion for a new trial, the trial court observed that the land in question had "uniqueness" because of historical significance, it being conceded that this property was part of the site of the famous Battle of Monmouth. In fact, the State was acquiring it under its "Green Acres" program for that reason, among others. This historical significance, in the trial court's view, gave these lands "an added competitive advantage over surrounding lands to the State and the developers." Their "historical significance" was assumed to be the factor which influenced the jury to return its verdict in an amount substantially in excess of the highest appraisal of the experts  that offered by the property owner's expert. The trial court discounted the possibility that additional compensation had been given for interference with the owner's apple orchard business, noting that the jury had been cautioned and instructed that interference with the owner's business was to play no part in its verdict. It concluded that "historical significance" was a proper element to be considered by the jury in arriving at its award. For that reason, the State's motion to set aside the verdict and to order a new trial was denied.
There are two difficulties with this rationale. First, none of the experts testified as to the effect, if any, upon the land's value due to its association with the Battle of Monmouth. We have no doubt that such testimony would have been proper. But none was offered. In fact, no expert referred to or based his opinion on this historical factor in any way. "If the market value of the land has been enhanced by reason of its patriotic or historic associations, that is * * * *30 an element to be considered, as if there were an open mine upon it, or any other matter of a similar nature had contributed to increase its value." Five Tracts of Land, etc. v. United States, 101 F. 661, 663 (3 Cir. 1900). This does not mean that a jury may arbitrarily, unaided by any expert opinion and without any supporting evidence, place its own enhanced valuation upon the property because of some historical association of the land.
The second difficulty with upholding the jury's award on the theory of the historical factor is the trial court's ruling that evidence of the land's historical background was not admissible or material "in the absence of the experts putting some additional value" on the land by reason thereof. The court properly ruled that the jury would have no measuring device or guide by which it could convert this additional factor into dollars above the values testified to by the experts for the land's highest and best use. The court further ruled with reference to a prospective witness, a Dr. Gillman considered to be a local expert on the Revolutionary War, that it would sustain an objection to his testimony, "unless he translates it into the market value of the land." Dr. Gillman was not called as a witness.
Despite these trial rulings and the lack of any expert testimony translating the historical factor into its effect upon the market value of the land, the property owner's attorney was permitted, over objection, to expound at length upon the historical factor in his summation. Moreover, the trial court instructed the jury:
"If you find under the evidence that this property has a unique value which separates or distinguishes it from other lands and that such unique value was or might reasonably be an element of consideration on the part of either the willing buyer or the willing seller or both negotiating for the property then you would also consider such unique value as an element in awarding just compensation for the lands here in question."
The State objected to this portion of the charge on the ground that it lent itself to speculation by the jury; that the case *31 had been submitted on the basis of its best and highest use  real estate development  and not on the basis that this property had a unique value for other purposes.
We have no doubt that defendant's inclusion of the historical significance factor in summation and the judge's instruction as to "unique value" had the capacity to induce the verdict awarding the property owner more than $100,000 in excess of the highest appraisal of the experts. The trial court recognized the importance and influence of the factor of historical significance in denying the State's motion for a new trial, finding justification for the verdict in this very factor alone. Yet, the jury had added $100,800 on top of the highest appraisal in an arbitrary evaluation of its own without any supporting evidence and, as the trial judge previously had ruled in excluding testimony as to the historical background, without any measuring device or other guide by which this factor could be translated into dollars. We conclude that prejudicial error was committed and a new trial should have been ordered.
Wemrock argues that the jury was not bound to accept the opinions of any of the experts and, having viewed the property, could have made its own independent appraisal of value. Moreover, it is contended that there was testimony as to a sale of a comparable property only six months prior to the valuation date  the sale of 135 acres from Chu to New Colonial Acres at $3,000 an acre in May 1965  and the jury may have based its figure thereon.
Concededly, a jury may fix the value of the land at a figure which does not coincide with the valuation of one or more of the expert witnesses, since it is entitled to reach its own conclusion based upon all the evidence. "Expert testimony is not necessarily binding upon the jury. The jury may adopt so much of it as appears sound, reject all of it, or adopt all of it." State Highway Com. v. Mayor and Board of Aldermen of Town of Dover, 109 N.J.L. 303, 307 (E. & A. 1932). In that case, the real estate experts valued the lands at various figures from $22,498.28 to $31,200 and the jury, after *32 viewing the premises, returned a verdict of $7,500. The verdict was upheld. In the case of In re Housing Authority of City of Bayonne, 21 N.J. Super. 254 (App. Div. 1952), a jury verdict of $12,000 for the property was upheld. But there the experts had valued it at figures between $10,000 and $23,000. We cited the rule noted above and the case of State Highway Com. v. Mayor and Board of Aldermen of Town of Dover, supra.
However, we are referred to no case where a verdict fixing a value so greatly in excess of the expert opinions, as in the instant case, has been upheld, especially where the probable basis for the excess is the jury's own unaided evaluation of the historical factor, without a shred of evidentiary support for the substantial monetary addendum.
Not only is there very slight likelihood that the verdict was grounded on the Chu sale, but the generality of the verdict and the trial court's opinion compel the conclusion that the jury relied upon the Battle of Monmouth and its knowledge thereof, great or small, as the reason for the sum awarded by it in excess of the experts' valuations. Certainly, the State's purposes in acquiring the property would not be a proper consideration in fixing its value. "Neither the individual advantages to the party acquiring the land, nor the necessity of its acquisition, can be considered in computing the value of the land to the owner." Currie v. Waverly & N.Y.B.R.R. Co., 52 N.J.L. 381, 395 (E. & A. 1890). So, too, "the special value of the land to the * * * [condemnor], as distinguished from others who may or may not have the power to condemn, must be excluded." Yara Engineering Corp. v. City of Newark, 136 N.J. Eq. 453, 464 (Ch. 1945).
The State also argues that the trial court erred when it instructed the jury that comparable sales made by other owners to the State of New Jersey could be testified to, as they were, but "the value of lands may become depressed by the cloud of condemnation; that the significance of such sales can in some instances become untrustworthy as a useful *33 guide." The State did not object to this portion of the charge. It is, therefore, precluded from questioning the propriety thereof on appeal, absent a showing of "plain error." Gebhardt v. Public Service Coordinated Transport, 48 N.J. Super. 173, 180 (App. Div. 1957); R.R. 4:52-1; R.R. 1:5-3 (c). Moreover, the State did not comply with the mandatory requirement of R.R. 1:7-1(c), having failed to note in its statement of the questions involved that this question was not presented to the court below. Therefore, this issue is not properly before us. Aiello v. Myzie, 88 N.J. Super. 187, 193 (App. Div. 1965).
However, since the case must be retried, we call attention to State by State Highway Com'r v. Burnett, 24 N.J. 280 (1957). The court there said:
"Values which have been depressed by the cloud of condemnation are said to be untrustworthy in some instances * * * On the other hand our courts have, in the incessant search for objective factors of measurement, permitted evidence of private sales to parties having the power to condemn." (at p. 294)
In Moorestown Tp. v. Slack, 85 N.J. Super. 109 (App. Div. 1964), we said:
"In the absence of affirmative evidence that the sellers were under compulsion, sales to an authority having the power of condemnation do not by reason of that fact alone necessarily lose competency or significant probative weight." (at p. 115)
See, too, Curley v. Jersey City, 83 N.J.L. 760 (E. & A. 1912). We find no affirmative evidence herein that any of the owners who sold directly to the State were under compulsion to sell. What the trial judge's instruction in this regard did was to give added weight to the testimony of Garrabrant, the property owner's expert.
For the reasons above stated, the judgment is reversed, insofar as it awarded $450,000 for parcel 2, and the case is remanded to the trial court for a new trial as to that parcel only.