209 N.J. Super. 1 (1985)
506 A.2d 1225
EMANUELE AMARU AND GIOVANNA AMARU, PLAINTIFFS-RESPONDENTS,
v.
JAMES B. STRATTON AND CATHERINE M. STRATTON, DEFENDANTS-RESPONDENTS, AND PATHMARK OF WAYNE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 24, 1985.
Decided October 21, 1985.
*6 Before Judges MICHELS and DEIGHAN.
O'Meara & Kenny, attorneys for appellant Pathmark of Wayne (Richard M. O'Meara, of counsel; Richard M. O'Meara and Paul R. Kenny, on the brief).
Lamb, Chappell, Hartung, Gallipoli & Coughlin, attorneys for respondents James B. Stratton and Catherine M. Stratton (Peter F. Bariso, Jr., of counsel and on the brief).
William Sellinger, attorney for respondents Emanuele Amaru and Giovanna Amaru (William Sellinger and Barry F. Zotkow, on the brief).
The opinion of the Court was delivered by MICHELS, P.J.A.D.
Defendant Supermarket General Corporation, t/a Pathmark of Wayne (Pathmark) appeals from a judgment of the Law Division entered on a molded jury verdict (1) awarding plaintiffs Emanuele Amaru and Giovanna Amaru damages totalling $170,549.79 and (2) dismissing its cross-claim for contribution against defendants James B. Stratton and Catherine M. Stratton and from a denial of its motions for a judgment notwithstanding the verdict or, alternatively, for a new trial or for a remittitur.
Plaintiff Emanuele Amaru instituted this action to recover damages for personal injuries sustained as a result of an automobile accident involving defendants Strattons on March 23, 1981, and as a result of a slip and fall while shopping at Pathmark on December 15, 1981. Plaintiff's wife sued per *7 quod. At the conclusion of the lengthy trial the trial court molded the jury verdict of "no cause for action" in favor of defendants Strattons and assessed costs of suit in their favor against plaintiffs. Plaintiff was awarded damages against Pathmark in the sum of $125,000.00 plus prejudgment interest of $17,124.86 for a total award of $142,124.86. Plaintiff's wife was awarded damages against Pathmark in the sum of $25,000 plus prejudgment interest of $3,424.93 for a total of $28,424.93. Pathmark's motions for a judgment notwithstanding the verdict or, alternatively, a new trial or a remittitur were denied. This appeal followed.
We have carefully considered the record in light of the arguments presented and are satisfied that the evidence in support of the jury verdict is not insufficient, that the determination of the trial court on the motion for a new trial does not constitute a manifest denial of justice and that all issues of law raised are clearly without merit. R. 2:11-3(e)(1)(B), (C) and (E). However, further comment may be useful with respect to some of Pathmark's contentions.

I.
First, Pathmark contends that the trial court abused its discretion by ruling that Dr. Cimillo's bills for treatment of plaintiff's psychological condition after the Pathmark fall on December 15, 1981, were "not collectible" under the New Jersey Automobile Reparation Reform Act (No Fault Act), N.J.S.A. 39:6A-1 et seq. The trial court's ruling rendered the bills admissible before the jury pursuant to N.J.S.A. 39:6A-12 for the purpose of proving damages. Pathmark also urges that the trial court erred by denying its motion for a pre-trial hearing on the admissibility of the bills and reserving its decision on their admissibility until after hearing "the testimony of the witnesses in the court of the trial." In our view, the rulings of the trial court were entirely proper and were incapable *8 of causing "a miscarriage of justice under the law." See R. 2:10-1; Dolson v. Anastasia, 55 N.J. 2, 7 (1969).
Pursuant to N.J.S.A. 39:6A-4 of New Jersey's No Fault Act, every automobile liability insurance policy insuring an automobile against loss arising from liability for bodily injuries sustained by any person in the course of using or operating an automobile must provide personal injury protection (PIP) coverage, regardless of fault, to persons falling within certain specifically designated categories. These persons include "the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident while occupying ... or using the automobile of the named insured." N.J.S.A. 39:6A-4. PIP coverage includes "[p]ayment of all reasonable medical expenses incurred as a result of personal injury sustained in an automobile accident." N.J.S.A. 39:6A-4a.
The Legislature intended a person's no fault automobile insurance to be an injured person's exclusive remedy for medical expense claims arising out of an automobile accident. Smelkinson v. Ethel & Mac Corp., 178 N.J. Super. 465, 469 (App.Div. 1981). See N.J.S.A. 39:6A-12. To fulfill this purpose and to prevent injured persons from being "unduly enriched by double recovery of [their medical] expenses," see Cirelli v. The Ohio Casualty Insurance Co., 72 N.J. 380, 387 (1977); see also Aetna Ins. Co. v. Gilchrist Brothers, Inc., 85 N.J. 550, 562 (1981), the Legislature provided in N.J.S.A. 39:6A-12 that evidence of PIP benefits collectible or paid to an injured person is "inadmissible in a civil action for recovery of damages for bodily injury by such injured person." N.J.S.A. 39:6A-12, in pertinent part, states:
Except as may be required in an action brought pursuant to section 20 of this 1983 amendatory and supplementary act, evidence of the amounts collectible or paid pursuant to sections 4 and 10 of this act to an injured person, including the amounts of any deductibles or exclusions elected by the named insured pursuant to section 13 of this 1983 amendatory and supplementary act, otherwise compensated is inadmissible in a civil action for recovery of damages for bodily injury by such injured person.
*9 The determination as to whether certain items, such as medical bills, constitute "evidence of the amounts collectible or paid" under the PIP provisions of the No Fault Act constitutes, in the first instance, a question of law for the trial judge. See Eivd.R. 8(2); Tullis v. Teial, 182 N.J. Super. 553, 558 (App.Div. 1982); Clifford v. Opdyke, 156 N.J. Super. 208, 213 (App.Div. 1978); Fitzgerald v. Wright, 155 N.J. Super. 494, 503 (App.Div. 1978). The No Fault Act apparently offers no definition of the term "collectible," but in Tullis v. Teial, 182 N.J. Super. 553 (App.Div. 1982), the Appellate Division interpreted "collectible" to mean "legally due." See id. at 558. Under the No Fault Act, PIP benefits "legally due" include "all reasonable medical expenses incurred as a result of personal injury sustained in an automobile accident." N.J.S.A. 39:6A-4a.
There can be no doubt that the medical bills for Dr. Cimillo's treatment of plaintiff between the automobile accident and the Pathmark fall on December 15, 1981, were "collectible" under the No Fault Act and accordingly were inadmissible in plaintiff's suit against defendant Stratton, the driver of the car. Moreover, the trial court's ruling that Dr. Cimillo's bills for his treatment of plaintiff following the Pathmark fall were "not collectible" under the No Fault Act has ample support in the record. The trial court essentially ruled that the treatment rendered to plaintiff by Dr. Cimillo following the fall did not constitute treatment for "personal injury sustained in [the] automobile accident." N.J.S.A. 39:6A-4a (emphasis supplied). Rather, as Dr. Cimillo himself testified, "the bills which [he] rendered since December 15th of 1981 [were] causally related to the trauma suffered by plaintiff on December 15, 1981."
Pathmark also argues that the trial court erred by denying its motion for a pre-trial hearing, pursuant to Evid.R. 8, on the admissibility of Dr. Cimillo's bills. Evid.R. 8 states that "[w]hen ... the admissibility of evidence ... is in issue, that issue is to be determined by the judge.... The judge may hear *10 and determine such matters out of the presence or hearing of the jury."
The trial court's denial of Pathmark's motion constituted a proper exercise of discretion. Pathmark did not make its motion for a Rule 8 hearing until after jury selection, and the trial judge reasonably believed that if he granted Pathmark's motion the case would be "attenuated to probably twice what it would be otherwise." Instead, the trial court reserved judgment until after "hear[ing] the testimony of the witnesses in the course of the trial." Pathmark makes no demonstration of prejudice arising from this decision. The trial court did not admit Dr. Cimillo's bills into evidence until the end of trial, following its consideration of the witnesses' testimony and counsel's arguments. Moreover, counsel for all three defendants had substantial opportunity to conduct a thorough cross-examination of Dr. Cimillo regarding his billing methods and errors he made in his expert reports prepared for plaintiff's insurance company.

II.
Pathmark next asserts a variety of trial errors concerning expert testimony elicited at trial from Doctors Doerr, Cimillo and Sozzi and Mr. Sirota, primarily on the ground that portions of admitted expert testimony exceeded the scope of the experts' reports disclosed during discovery.
New Jersey's rules of discovery provide that a party may utilize interrogatories to
disclose the names and addresses of each person whom the other party expects to call at trial as an expert witness, including a treating physician who is expected to testify and of an expert who has conducted an examination pursuant to R. 4:19 whether or not he is expected to testify, to state the subject matter on which the expert is expected to testify, to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion, and to furnish, as provided by R. 4:17-4(a), a copy of the report of an expert witness, including a treating physician, and, whether or not he is expected to testify, of an expert who has conducted an examination pursuant to R. 4:19. [R. 4:10-2(d)(1)].
*11 If an interrogatory requests the answering party to attach a copy of an expert's or treating physician's report, the answering party has a continuing obligation to provide all requested material, including all reports already prepared by the expert or treating physician, a summary of any oral reports, and the contents of any report subsequently received, whether written or oral. See R. 4:17-4(a) and (e); Clark v. Fog Contracting Co., 125 N.J. Super. 159, 161-162 (App.Div. 1973), certif. den., 64 N.J. 319 (1973). Cf. R. 4:10-2. A trial court may exclude the testimony of an expert or treating physician whose report is not furnished to the opposing party in accordance with R. 4:17-4. R. 4:23-5(b). The imposition of such a sanction, however, is clearly not an absolute requirement but rather is left to the discretion of the trial court. Clark v. Fog Contracting Co., supra, 125 N.J. Super. at 162. See Reilly v. Spiegelhalter, 100 N.J. Super. 276, 283-284 (App.Div. 1968). Factors that should "`strongly urge'" a trial court not to impose sanctions include "(1) the absence of a design to mislead, (2) absence of the element of surprise if the evidence is admitted, and (3) absence of prejudice which would result from the admission of the evidence." Westphal v. Guarino, 163 N.J. Super. 139, 146 (App.Div. 1978), aff'd o.b., 78 N.J. 308 (1978).
Moreover, subject to the aforementioned requirements, neither New Jersey's Rules of Evidence nor the Civil Practice Rules limit an expert's testimony to material disclosed by an expert's oral or written reports during trial preparation. For example, Evid.R. 56(2) provides that:
(2) A witness qualified pursuant to Rule 19 as an expert by knowledge, skill, experience, training or education may testify in the form of opinion or otherwise as to matters requiring scientific, technical or other specialized knowledge if such testimony will assist the trier of fact to understand the evidence or determine a fact in issue. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
In addition, "[s]ubject to Rule 56, a witness may testify in terms of opinion or inference and give his reasons therefor *12 without prior disclosure of the underlying facts or data...." Evid.R. 57. And, it is fundamental that "[t]estimony in the form of opinions or inferences otherwise admissible under these rules is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the [sic] fact." Evid.R. 56(3).
Applying the foregoing principles it is evident that the trial court properly permitted Dr. Doerr to respond to a question comparing the condition of plaintiff's spine in September of 1981 and in December of 1981 did not constitute an abuse of discretion. The only impropriety suggested by Pathmark is that Dr. Doerr's testimony exceeded the scope of the written reports submitted. However, as aforementioned, that an expert's testimony exceeds the scope of written reports requested in discovery does not automatically bar that testimony from trial. Pathmark's interrogatories apparently requested only written reports, not oral. In addition, Pathmark makes no allegation and offers no proof that plaintiff withheld any reports, either written or oral, in violation of the rules of discovery.
Moreover, the doctor revealed the facts and data upon which he based his response, including facts relating to the aggravation of plaintiff's condition by both the car collision and the Pathmark fall. Indeed, in light of the importance at trial of the relative impact of plaintiff's accidents upon his physical and psychological condition and the information contained in Dr. Doerr's reports, Pathmark should reasonably have anticipated that plaintiff would seek Dr. Doerr's opinion concerning these matters. Plaintiff's question did not pose any danger of surprise or other prejudice nor was it objectionable because it embraced an ultimate issue for the factfinder. See Evid.R. 56(3); Westphal v. Guarino, supra, 163 N.J. Super. at 146.
Pathmark also objected on similar grounds to a question propounded during plaintiff's redirect examination of Dr. Doerr concerning the causative factors affecting the shifting of plaintiff's *13 spine. The trial court had previously ruled that plaintiff was precluded from seeking that information on direct examination. However, because Pathmark's trial attorney had questioned Dr. Doerr during cross-examination about the shifting of plaintiff's spine, the question constituted a proper subject for redirect examination. By allowing plaintiff's question, the trial court enabled plaintiff to provide a balanced view of the issue and, incidentally, protected his right to a fair trial. In the circumstances the trial court's ruling did not constitute an abuse of discretion. See State v. Juliano et al., 97 N.J. Super. 28, 32-33 (App.Div. 1967), modified on other grounds, 52 N.J. 232 (1968).
Pathmark argues that for the trial court "[t]o have permitted plaintiff to elicit opinions regarding the effects of the Pathmark accident where that accident had not been addressed or in any way mentioned in the reports of Dr. Cimillo ... produced pursuant to R. 4:17-4(e), constituted a wholesale relaxation of the rules of discovery." However, Pathmark made no objection below to Dr. Cimillo's testimony on this ground and neither makes any allegation nor offers any proof that plaintiff had received other written or oral reports from Dr. Cimillo which plaintiff should have disclosed to Pathmark. Moreover, Dr. Cimillo's testimony did not pose a danger of surprise or other prejudice to Pathmark. Pathmark through discovery knew that Dr. Cimillo had treated plaintiff following his fall at Pathmark and could reasonably anticipate Dr. Cimillo's testifying concerning the effects of that fall upon plaintiff's psychological condition. Dr. Cimillo was fully competent to render that opinion and his testimony fully complied with the Rules of Evidence. See Evid.R. 56 & 57.
Pathmark also objected below that Dr. Cimillo should not have been permitted to render an opinion based on a report prepared by Dr. Brand, a neurologist who also cared for plaintiff. However, the trial court properly ruled that Dr. Cimillo's opinion was admissible because based on facts or data "reasonably *14 relied upon by experts in the particular field in forming opinions or inferences upon the subject...." See Evid.R. 56(2). See also Evid.R. 56(2) at 387-388 (Anno. 1985). The record indicates that Pathmark had possession of Dr. Brand's report and thus was afforded a full opportunity to cross-examine Dr. Cimillo concerning his opinion.
Pathmark argues that the trial court erred by permitting Dr. Sozzi to testify about the effects of the Pathmark accident. Dr. Sozzi's testimony posed no danger of surprise or other prejudice and was based on material obtained by Pathmark during pre-trial discovery. The trial court's ruling in this regard was well-reasoned and constituted a proper exercise of discretion.
Finally, Pathmark claims that Mr. Sirota's testimony violated R. 4:17-7. Pathmark's concern, apparently, is that it lacked notice of plaintiff's intention to have Mr. Sirota testify. However, there is no indication in the record that plaintiff planned to have Mr. Sirota testify as an expert until Pathmark and Stratton cross-examined plaintiff about his workers' compensation petition. Both defendants evidently had the workers' compensation claim petition, prepared by Mr. Sirota, in their possession, and Pathmark makes no demonstration of prejudice arising from Mr. Sirota's limited testimony. The trial court ascertained that Mr. Sirota had the requisite "knowledge, skill, experience, training or education" to testify to the legal meaning of the terms in the petition and that such testimony would assist the trier of fact to understand the evidence and to determine the facts in issue. See Evid.R. 56(2). The trial court's ruling in this regard was legally correct.

III.
Pathmark next contends that the trial court erred by denying its motion for mistrial made at the completion of plaintiff's opening statement on grounds that certain statements made by counsel during the course of that opening were unduly prejudicial. *15 Such rulings on motions for mistrial are discretionary with the trial judge and should not be disturbed absent a showing of an abuse of discretion. Runnacles v. Doddrell, 59 N.J. Super. 363, 366 (App.Div. 1960). See also Wright v. Bernstein, 23 N.J. 284, 296 (1957); Wyatt v. Curry, 77 N.J. Super. 1, 11 (App.Div. 1962). In an action involving the misconduct of counsel, a mistrial should not be granted absent a clear showing of prejudice to the opposing party. Runnacles v. Doddrell, supra, 59 N.J. Super. at 367. See also Wright v. Bernstein, supra, 23 N.J. at 296; Mazza v. Winters, 95 N.J. Super. 71, 81 (App.Div. 1967); Wyatt v. Curry, supra, 77 N.J. Super. at 11. The exercise of judicial discretion in a ruling on a motion for mistrial requires:
the appraisal by the trial court of the probable effect of the objectionable utterance on a fair trial. It is undesirable that a trial be aborted and that the parties be required to incur the expense attendant upon retrial. By the same token expedition should not be served at the expense of crippling the cause of one party or the other by permitting the intrusion of evidence which will serve to confuse the jury or cause it to reach its verdict by emotion rather than by reason. [Runnacles v. Doddrell, supra, 59 N.J. Super. at 367].
Pathmark contends that it was denied a fair trial because of certain remarks made by plaintiff's counsel during his opening statement. The fundamental purpose of opening statements is "`to do no more than inform the jury in a general way of the nature of the action and the basic factual hypothesis projected, so that they may be better prepared to understand the evidence.'" Passaic Valley Sewerage Com'rs v. Geo. M. Brewster, etc., Inc., 32 N.J. 595, 605 (1960) (quoting Farkas v. Middlesex County Board of Chosen Freeholders, 49 N.J. Super. 363, 367-368 (App.Div. 1958)). Our Supreme Court succinctly outlined the guidelines governing the presentation of opening statements in Passaic Valley Sewerage Com'rs v. Geo. M. Brewster, etc., Inc., supra:
Counsel must be summary and succinct. Proposed evidence should not be detailed and it will be little more than an outline, quite frequently a fairly indefinite one by reason of the nature of the case. In no sense can it be argumentative or have any of the attributes of a summation. Nothing must be said which the lawyer knows cannot in fact be proved or is legally inadmissible. *16 Paxton v. Misiuk, 54 N.J. Super. 15, 20 (App.Div. 1959); Shafer v. H.B. Thomas Co., [53 N.J. Super. 19 (App.Div. 1958)] supra. [Id., 32 N.J. at 605].
In light of the foregoing principles, the trial court's denial of Pathmark's motion for mistrial did not constitute a mistaken exercise of discretion. The remarks by plaintiff at this early stage of the proceedings were not of such moment as to threaten Pathmark's enjoyment of a fair trial.
Pathmark argues that counsel's statements that "we cannot bring all of [plaintiff's] physicians to court ... [because] the expense would be very high" and that plaintiff's medical bills from his auto accident case "were taken care of in a separate and distinct way" elicited undue sympathy for plaintiff and improperly focused the jury's attention on plaintiff's poverty. However, while the better practice would have been for counsel not to have made these statements, counsel's statements were non-evidentiary and merely helped explain for the jury why plaintiff had elected not to present certain evidence which a layman might otherwise have expected to hear. Moreover, considered in the entire context of trial, the probability that these statements could have affected the jury's final verdict is minimal. Cf. Suarez v. Dosky, 171 N.J. Super. 1, 11 (App.Div. 1979), certif. den., 82 N.J. 300 (1980).
Pathmark next contends that plaintiff's counsel improperly instructed the jury "regarding a supermarket's special burden of proof." We disagree. Plaintiff's counsel was merely exhorting the jury to find that Pathmark had not complied with its duty to its customers as business invitees. Counsel did not instruct the jury as to the law but rather set forth a factual hypothesis and then referred the jury to the trial court's instructions for an accurate statement of the law. See State v. Hipplewith, 33 N.J. 300, 315 (1960); Passaic Valley Sewerage Com'rs v. Geo. M. Brewster, etc., Inc., supra, 32 N.J. at 605. In addition, the trial court alleviated the possibility of error by later instructing the jury that it had a duty "to accept and be *17 controlled by the law as it is stated by the Court," not by the remarks of counsel.
Finally, Pathmark objects to remarks made by plaintiff's counsel concerning the opinion of Dr. Zigarelli, Pathmark's medical expert, that the auto accident with Stratton so affected plaintiff emotionally as to cause him to develop residual neuropsychiatric and neurological problems. Pathmark urges that the challenged comments by plaintiff's counsel "permitted the jury to draw an unfair and prejudicial inference regarding Pathmark's failure to call this doctor." Counsel's remark did, arguably, draw inappropriate attention to Pathmark's decision not to have Dr. Zigarelli testify at trial and risked having the jury draw an adverse inference from his absence. However, the prejudicial impact of that remark was substantially lessened by Pathmark's later decision to read Dr. Zigarelli's report into the record without affording plaintiff the opportunity to cross-examine Dr. Zigarelli on the report's contents. Moreover, the trial court instructed the jury in its charge that counsels' statements were not to be viewed as evidentiary. See Rolfe v. Olson, 87 N.J. Super. 242, 246 (App. Div. 1965). In the circumstances, counsel's statement, though arguably improper, did not afford grounds for the trial court to grant a mistrial.

IV.
Pathmark further contends that the trial court erred by denying its motion to dismiss juror number two for cause "as she was the only panel member to speak and understand Italian and thus, unlike the other jurors, would not receive testimony from Amaru solely through the translation." However, a trial court is "vested with broad discretionary powers in determining the qualifications of jurors and ... its exercise of discretion will ordinarily not be disturbed on appeal." State v. Jackson, 43 N.J. 148, 160 (1964), cert. denied, sub nom. Ravenell v. New Jersey, 379 U.S. 982, 85 S.Ct. 690, 13 L.Ed.2d 572 (1965). See State v. *18 Singletary, 80 N.J. 55, 62 (1979); State v. Simmons, 120 N.J.L. 85, 90 (E. & A. 1938). Juror number two was evidently able "to read, write, and understand the English language," and thus she satisfied the linguistic requirement established by our Legislature for qualification as a juror. See N.J.S.A. 2A:69-1.
Moreover, the ability of juror number two to understand and speak Italian did not in any way have the potential to hinder her ability, or that of the jury, to render an impartial and unprejudiced verdict free from improper influences. See Wright v. Bernstein, supra, 23 N.J. at 294-295. See also State v. Sugar, 84 N.J. 1, 23 (1980); State v. Singletary, supra, 80 N.J. at 62; State v. Jackson, supra, 43 N.J. at 156-158. On voir dire juror number two stated that she would abide by the interpreter's version of plaintiff's testimony and not on her own understanding, that she would not be annoyed or distracted by the use of an interpreter, and that she could render a fair and impartial verdict. Where a trial court questions a venireman and concludes from his or her responses that he or she will be impartial, such professions of impartiality should be accorded a great deal of weight. State v. Singletary, supra, 80 N.J. at 64. In addition, Pathmark's counsel could have exercised a peremptory challenge at the time to remove juror number two if he felt juror number two could not be impartial. Evidently he chose not to do so. Thus, we reject Pathmark's contention that the trial court erred by denying its motion to dismiss juror number two.

V.
Pathmark sought contribution from co-defendant Stratton for the damages awarded against it for the plaintiff's injuries. Pathmark claims that the jury's verdict in favor of Stratton was against the weight of the evidence and therefore should have been set aside. We disagree.
The trial court properly instructed the jury that to hold Stratton liable for injuries sustained by plaintiff in the auto *19 accident it first had to find that (1) Stratton had acted negligently; (2) his negligence had proximately caused the accident; and (3) that plaintiff's pre-existing injury was aggravated by the auto accident. With respect to either Stratton's or Pathmark's aggravation of a pre-existing injury, the trial court also instructed the jury that
if a party had a preexisting illness or injury, that party is entitled to an award of damages, if the negligence of the defendant or defendants is a proximate cause of those injuries. If you find that either of these defendants was negligent and that their negligence was a proximate cause of the plaintiff's injuries or illness, then the plaintiff is entitled to an award for all damages which proximately flow from the accident which the defendants are at fault.
If you find that the plaintiff's preexisting illness or injury was aggravated, accelerated or worsened by the negligence of one or both of these defendants, you must compensate the plaintiff for all his injuries.
This instruction fully complied with the applicable law. See Green v. Buck Brothers Co., et al., 98 N.J. Super. 187, 192-193 (App.Div. 1967), aff'd o.b., 51 N.J. 6 (1967); McCray v. Chrucky, 66 N.J. Super. 124, 128-130 (App.Div. 1961). The jury found in response to the trial court's special interrogatories that Stratton was negligent and that his negligence proximately caused the accident with plaintiff. However, the jury responded "no" to the trial court's inquiry as to whether "plaintiff's injury was aggravated by the auto accident." Accordingly, Stratton was not liable for plaintiff's injuries.
The jury's verdict that the auto accident did not aggravate plaintiff's injuries had ample support in the record and did not have a clear capacity to cause a miscarriage of justice under the law. Even assuming, as Dr. Doerr testified, that the auto accident did cause plaintiff to sustain a jolt to the back, the photographic evidence presented at trial convincingly established that the damage sustained by plaintiff's car was minimal and the accident minor. Plaintiff was able to exit the car immediately to inspect the damage caused by the collision and to attempt to reach a settlement with Stratton regarding all damages caused by the accident. Moreover, the allegation that his back injury was aggravated by the collision was contradicted *20 by his decision not to consult a doctor until four or five days after the accident. A jury has no duty to give controlling effect to any or all of the testimony provided by the parties' experts, even in the absence of evidence to the contrary. "The jury may adopt so much of it as appears sound, reject all of it, or adopt all of it." State Highway Com. v. Dover, 109 N.J.L. 303, 307 (E. & A. 1932). See also State in the Interest of C.A.H. & B.A.R., 89 N.J. 326, 343 (1982); State v. Wemrock Orchards, Inc., 95 N.J. Super. 25, 31 (App.Div. 1967), certif. den., 50 N.J. 92 (1967). Contrary to Pathmark's assertion, the jury verdict did not amount to a miscarriage of justice.
Finally, there is no support in the record for Pathmark's argument that the trial court "rushed" the proceedings below or that its decision to hold the jury until 8:30 p.m. on April 19 to enable it to reach a decision before Easter weekend resulted in an unjust verdict. See R. 2:10-1.

VI.
Finally, Pathmark claims that "the disproportionate size of the jury verdict when reviewed in the light of the medical testimony required the Court to make an accommodation reducing the size of the verdict." We disagree and affirm the trial court's denial of the remittitur.
Where a party seeks a remittitur of the damages awarded by a jury, "a trial judge should not interfere with the quantum of damages assessed by a jury unless it is so disproportionate to the injury and resulting disability shown as to shock his conscience and to convince him that to sustain the award would be manifestly unjust." Baxter v. Fairmont Food Co., 74 N.J. 588, 596 (1977); Sweeney v. Pruyne, 67 N.J. 314, 315 (1975). The judgment of the initial factfinder, whether a judge or jury, is owed considerable respect and should not be upset
except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest denial of justice. The process of "weighing" the evidence is not to encourage *21 the judge to "evaluate the evidence as would a jury to ascertain in whose favor the evidence preponderates" (Kulbacki v. Sobchinsky, 38 N.J. 435, 455 (1962) (Haneman, J., concurring) and on that basis to decide upon disruption of the jury's finding. "[T]he judge may not substitute his judgment for that of the jury merely because he would have reached the opposite conclusion; he is not a thirteenth and decisive juror." Dolson v. Anastasia, supra, 55 N.J. [2] at 6 [(1969)]. Nevertheless, the process of evidence evaluation called "weighing" is not "a pro forma exercise, but calls for a high degree of conscientious effort and diligent scrutiny. The object is to correct clear error or mistake by the jury." Id. It is only upon the predicate of a determination that there has been a manifest miscarriage of justice, that corrective judicial action is warranted. [Baxter v. Fairmont Food Co., supra, 74 N.J. at 597-598].
On appeal the same standard applies to an appellate court reviewing a trial judge's determination except that the trial court's opportunity to develop a "feel of the case" is entitled to deference. Dolson v. Anastasia, supra, 55 N.J. at 7. See also Baxter v. Fairmont Food Co., supra, 74 N.J. at 600; Fritsche v. Westinghouse Electric Corp., 55 N.J. 322, 330 (1970).
In assessing damage awards in tort actions there generally is no precise correspondence between money and physical or mental suffering. Rather, the only method for evaluating damages is to identify "such amount as reasonable persons estimate to be fair compensation." Botta v. Brunner, 26 N.J. 82, 95 (1958); Deemer v. Silk City Textile Mach. Co., 193 N.J. Super. 643, 651 (App.Div. 1984); Lewis v. Read, 80 N.J. Super. 148, 174 (App.Div. 1963), certif. granted, 41 N.J. 121 (1963). Reasonable compensation for a plaintiff's injuries and losses in a tort action should include
compensation for his bodily injuries, for the pain and suffering resulting therefrom, past, present and future, for the effect of those injuries upon his health according to their degree and probable duration, and for any permanent disability which in reasonable probability has resulted or will result. To that sum should be added all expense, past and future, reasonably necessary or incidental to plaintiff's efforts to cure or alleviate his injuries or resulting disability, and all other pecuniary losses suffered or to be suffered in the future as the result of his inability to engage in his usual occupation.
[Theobold v. Angelos, 40 N.J. 295, 304 (1963)].
Turning to the record in this case, the jury's verdict in favor of plaintiff and his wife was surely not such as to shock the conscience nor was it manifestly unjust. The expert testimony *22 at trial revealed that prior to the fall at Pathmark plaintiff had a permanent injury to his lumbosacral spine but that both his physical and mental well-being were improving. The fall at Pathmark severely aggravated his original lower back injury and permanently injured his cervical spine and right shoulder. Plaintiff is now 100% sexually impotent and suffers from radiating pains down his legs and through his groin area. He also continues to suffer from a psychotic condition, which evidently has had a severe impact on both his and his wife's quality of life.
Plaintiff, who presently is approximately 53 years old and has three children, has a life expectancy of 22.34 years. His injuries have placed permanent and serious limitations upon his ability to move, engage in everyday social and athletic activities, and to pursue normal employment to support his family, especially in his chosen field of masonry. These disabilities, including the pain that plaintiff experiences almost daily, will surely have an impact on his future life. See Taweel, et al. v. Starn's Shoprite Supermarket, 58 N.J. 227, 236 (1971); Hacker v. Statman, 105 N.J. Super. 385, 395-396 (App.Div. 1969), certif. den., 54 N.J. 245 (1969).
In light of these factors, we cannot say that the jury's verdict was so excessive that it was a miscarriage of justice under the law. Although the jury's verdict may have been on the high side of the legitimate range of damages, we are satisfied that it does not require appellate intrusion. See Baxter v. Fairmont Food Co., supra, 74 N.J. at 603; Taweel, et al. v. Starn's Shoprite Supermarket, supra, 58 N.J. at 236-237. Additionally, in light of plaintiff's sexual impotence, psychotic condition, physical infirmity, and his inability to support his family and the abrupt deterioration of his relationship with his wife following the fall, the jury's $25,000 verdict in favor of plaintiff's wife was not unreasonable or excessive. *23 See Taweel, et al. v. Starn's Shoprite Supermarket, supra, 58 N.J. at 236-237; Hacker v. Statman, supra, 105 N.J. Super. at 395-396.
Accordingly, the judgment and the post-judgment orders under review are affirmed.