COLONIAL OAKS WEST, INC., A NEW JERSEY CORPORATION, *ET AL.*, PLAINTIFFS-APPELLANTS, v. TOWNSHIP OF EAST BRUNSWICK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY IN THE COUNTY OF MIDDLESEX, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued September 26, 1972—Decided November 20, 1972.

*Mr. Seymour Gelzer* argued the cause for the appellants (*Messrs. Iaria & Gelzer,* attorneys).

*Mr. Peter J. Selesky* argued the cause for the respondents (*Messrs. Selesky, Kolsky, Kravarik & Epstein,* attorneys).

The opinion of the Court was delivered by

JACOBS, J. The Law Division granted some but not all of the relief which the plaintiff-developers sought from the Township of East Brunswick along with its Board of Education and Planning Board. The plaintiffs appealed to the Appellate Division which affirmed in an unreported *per*

*curiam;* there was no cross appeal by the Township. We granted the plaintiffs' petition for certification. 60 *N. J.* 287 (1972).

The plaintiffs Colonial Oaks West, Inc., Deerfield Estates, Inc., Joaldan, Inc., Colonial Oaks, Inc., Picaro Building & Contracting Co., Inc., Picaro Brothers, Inc., and Picaro Home Builders, Inc. were developers and builders engaged in subdividing land and constructing dwellings and other structures in the Township of East Brunswick. They were largely controlled by Mr. Daniel Picaro who represented himself and two brothers. Picaro and his associates, acting through one or more of the corporations, acquired land in the Township from time to time and proceeded with development and construction. In 1968 an action in lieu of prerogative writ was initiated by Picaro naming the corporations as plaintiffs and the Township along with its Planning Board and Board of Education as defendants. The complaint contained five counts to the following effect.

In the first count the plaintiffs Colonial Oaks West, Inc. and Deerfield Estates, Inc. alleged that before applying to the Planning Board they were informally advised that they would not receive preliminary approval unless they donated the sum of $100,000 for school expansion purposes; that in the light of the foregoing and under duress they agreed to pay the $100,000 and have actually paid part thereof, namely $25,000; and they sought judgment for the return of the $25,000 and cancellation of their agreement to pay the remaining $75,000. On the basis of full testimony the Law Division found that the agreement to pay the $100,000 was obtained under duress and was "void and of no effect." See *West Park Ave., Inc. v. Ocean Tp.,* 48 *N. J.* 122 (1966) ; *Midtown Properties, Inc. v. Madison Tp.,* 68 *N. J. Super.* 197, 210 (*Law Div.* 1961), *aff'd,* 78 *N. J. Super.* 471 (*App. Div.* 1963). It directed that the $25,000 already paid be returned by the Board of Education to the plaintiff Deerfield Estates, Inc. and that the requirement for payment of the remaining $75,000 agreed upon "be set aside." Since

the defendants have not appealed from this direction it stands as entered and is not now before us for review.

In the second count the plaintiff Joaldan, Inc. alleged that although the Township operates its own water supply utility, it compelled the plaintiff to extend off-site water mains along Cranbury Road and as a result the Township was unjustly enriched in the sum of $29,497.50. In the third count the plaintiffs Colonial Oaks, Inc., Deerfield Estates, Inc., Picaro Building & Contracting Co., Inc., Picaro Brothers, Inc., and Picaro Home Builders, Inc. alleged that the Township required that they install on-site water mains and as a result the Township was unjustly enriched in the sum of $250,000 (later reduced to $219,677.36). The Law Division found that the requirement in the Land Subdivision Ordinance of the Township that plaintiffs install on-site water mains constituted "a lawful exercise of municipal power" and that the plaintiffs were not entitled to any reimbursement for their expenditures in connection with the on-site water mains. It also found that the alleged off-site water mains which the Planning Board required plaintiff Joaldan, Inc. to install were, under the particular circumstances as they appeared from the record, "in a real sense an on-site improvement." This explicit factual determination was not the subject of any direct attack by the plaintiffs either in their brief before the Appellate Division or in their petition for certification before us and we shall therefore not consider disturbing it.

After the Law Division made its determinations with regard to the water mains, and while the plaintiffs' petition for certification was pending, this Court handed down its opinion in *Deerfield Estates, Inc. v. Tp. of East Brunswick,* 60 *N. J.* 115 (1972). That case was concerned with a later Deerfield development and involved a proceeding in lieu of prerogative writ in which the developer had not installed the water mains but sought instead judicial relief either (1) directing the Township to install the water mains or (2) compelling the Township to enter into an agreement

under which the developer could proceed with installation of the mains and thereafter obtain reimbursement from the Township under a just and equitable formula. The Law Division had held that the Township had the power to require the developer to install the on-site water mains at its own cost and entered judgment for the Township which the Appellate Division sustained. In this Court the judgment was vacated and the cause was remanded for further proceedings in conformity with pertinent principles which were set forth in a comprehensive opinion by Justice Mountain and are controlling here. 60 *N. J.* 115–133.

*Deerfield* first pointed out that there was no longer any doubt that a municipality which, as here, "has created a planning board and adopted an adequate subdivision ordinance may impose, as a condition of subdivision approval, a requirement that necessary water mains be installed." 60 *N. J.* at 122. It then dealt with the question as to who was to bear the cost of the installation and listed alternative courses available to the municipality; included among these was the municipality's power to require "that the work be done at the expense of the developer," either with or without a formula for partial or total reimbursement, provided the local ordinance permits the imposition and "it is fair and equitable that this be done." 60 *N. J.* at 131.

In determining the fairness and equitableness of the imposition, the primary concern is with the purchaser (*cf.* 60 *N. J.* at 132) for it is generally to be assumed that the developer includes the water main expense as an item in fixing his selling price. If all developers have been treated alike by the Township and have paid the water main expenses without reimbursement, purchasers will as a practical matter have been dealt with equally and fairly; on the other hand if the Township has permitted the extension of water mains in other developments at general municipal expense, the imposition of water main costs on these developments would operate unequally and unfairly insofar as the purchasers in these developments are concerned. 60

*N. J.* at 132. In *Deerfield,* the record was inadequate to permit a final determination and accordingly there was a remand for further testimony and due application of the principles set forth in this Court's opinion; similarly, here the record is inadequate and there must be a comparable remand.

On the remand, the Law Division will take testimony not only with respect to the practices of the Township in connection with the installation of water mains at developments but also with respect to the issue of whether the costs incident to the water mains were passed on by the developers here to the purchasers; in the likely event that they were then, as contemplated by *Deerfield, supra,* 60 *N. J.* 115, any recoveries by the developers of such costs would justly be placed in trust under suitable court directions awaiting formal claims by the purchasers; and if the purchasers fail to assert their claims the laws of escheat will in time be applied.

The Law Division may be called on the remand to deal with a further matter which was not presented in *Deerfield.* Unlike the situation there the developers here did not make any demand of the Township that it install water mains nor did they initiate any judicial proceeding seeking such relief. On the contrary, they installed the water mains themselves and now seek damages as reimbursement. The record contains no explanation as to why they chose that course but they may now present such explanation together with other pertinent evidence and the Township may present evidence in support of any claim it may seek to assert that the developers should equitably be barred because of the course they pursued. See *Lake Intervale Homes, Inc. v. Parsippany-Troy Hills,* 28 *N. J.* 423, 430–431 (1968); *Yardville Estates, Inc. v. Trenton,* 66 *N. J. Super.* 51, 63 (*App. Div.* 1961).

In the fourth count the plaintiffs alleged that the Township had imposed water tap charges under Section 13–15.4 of its Revised General Ordinances which they asserted were

improperly imposed and had resulted in unjustly enriching the Township in the sum of $50,000. The cited section provides, *inter alia,* that a fee shall be charged for providing water service and that the fee "shall include the cost of issuing a permit, making the physical connection to a water main and a portion of the cost of increasing the capacity of the township's water supply and system in order to provide the water service." The fees are graduated according to the size of the corporation and main to be tapped and they amounted here to $120 per tap. The Township engineer testified that the fee schedule was fixed after receipt of a survey by a water consulting firm which the Township had engaged, and that it was being applied equally and indiscriminately to all homeowners in the Township. The Law Division evidently saw nothing improper in the fee schedule's constituent elements as set forth on the face of the ordinance, and neither do we. *Cf. Englewood Hills, Inc. v. Village of Englewood,* 14 *Ohio App. 2d* 195, 237 *N. E. 2d* 621 (*Ct. App.* 1967); *Western Heights Land Corp. v. City of Fort Collins,* 146 *Colo.* 464, 362 *P. 2d* 155 (1961).

▉ The real objection by the plaintiffs with respect to the tap-in fees seems to be that the Township has charged them for certain water main taps which were in fact installed by the plaintiffs rather than the Township. The testimony by Mr. Picaro was that he had a "very efficient qualified contractor" whose work progressed so fast that the two Township employees normally assigned to make the taps could not keep up with him. Under these circumstances, and to facilitate early completion of his development, he requested and obtained permission to make the taps himself and thereafter his own contractor installed 365 water taps. The Township billed for these in accordance with the fee schedule and the sum of $10,175 was actually paid to the Township, with the balance of $7,755 still owing to it. No proof was introduced of bad faith or delaying tactics on the Township's part in connection with the tap-ins. The Law

Division expressly found that the payments were voluntary, that there was no compulsion or duress exercised by the Township, and that "to allow plaintiffs, who found it to their economic advantage to install the taps themselves, and who were aware of the fees that would be imposed, to now recover those fees, only a portion of which is allocated to the physical tapping in, would be inequitable." There is no basis in the record for disturbing this finding. *Cf. Lake Intervale Homes, Inc. v. Parsippany-Troy Hills, supra,* 28 *N. J.* at 430–431; *Woodside Homes v. Morristown,* 26 *N. J.* 529, 544 (1958); *Yardville Estates, Inc. v. Trenton, supra,* 66 *N..J. Super.* at 63.

In the fifth and final count the plaintiffs alleged that the following fee requirements set forth in the Township's Revised General Ordinances were unreasonably high and should be set aside and declared invalid: (a) $125 for a building permit for each dwelling plus $50 for a certificate of occupancy; (b) an electrical fee of $35 to $200 depending on amperes; (c) a plumbing fee of $67 per dwelling; (d) an initial water fee of $120 to $875 depending on the size of the corporation and main to be tapped; and (e) Planning Board fees aggregating $125 per lot for sketch plan, preliminary and final map submissions. The $125 building permit fee which had no graduated aspects applied to new construction whereas the building permit fee for an addition to old construction was in a nominal sum. There were additional minor fees applicable to new construction which were not attacked in the plaintiffs' complaint but were referred to during the course of the proceeding in the Law Division; they are not in issue and need not be detailed here.

In pressing their attack on the building, plumbing and electrical permit fees as well as the Planning Board fees, the plaintiffs presented testimony by a registered municipal accountant who had examined the Township's official reports. Using a budgetary approach for the years 1960-68 he reported that during that period the Township received

fees totalling $1,052,150.40 from building, plumbing and electrical fees as against disbursements of $175,328.01 for the costs of operating the Township's building, electrical and plumbing departments. He also reported that during the same period the fees received by the planning and zoning boards aggregated $320,840 in contrast to disbursements of $123,361.56. Addressing himself to 1968, which was the year of the filing of the plaintiffs' complaint, he reported that the income received by the Township from all of the departments in question approximated $230,000 whereas their costs of operation approximated $55,000. He acknowledged that his disbursement figures included only the direct costs of operating the departments and did not include indirect costs; he further acknowledged that some indirect costs such as those relating to building space, insurance, social security, pension funds, etc. would reasonably be related to and properly allocated to costs of operation.

In the Law Division the Township did not dispute the foregoing figures but urged that, in determining the reasonableness of the fees, the costs of operation should not be confined to budgetary expenditures or direct costs but should include the time and money expenditures of every Township department which had any relationship whatever to the so-called "building function." In support of its thesis it engaged an accountant to make a so-called cost analysis of the building function for the expired year 1968. He interviewed department heads and received their rough estimates as to the time they and their personnel spent on matters bearing on new building construction in the Township. He was told what percentages of the activities of the Township Council's offices, the Township Mayor's office, the Township Clerk's office, and the Township Attorney's office related to new building construction, and he allocated corresponding percentages of their costs of operation to the so-called building function. Similarly he allocated to the building function percentages of the Township's overall costs for the following: "Building services, Accounting services, Purchas-

ing services, Vehicle depreciation provision, Administrative services and Department supervision." Though he charged the entire budgetary cost of the Planning Board to the building function he was unable to establish that he had credited the sum approximating $39,000 in revenue which the board had received during 1968. On the basis of his sweeping approach he reported that the Township's revenues from the fees in question exceeded costs by 18.86%. If the aforementioned $39,000 item was not properly taken into account by him then the excess would approximate 36%. In any event, the Law Division adopted the Township's accountant's approach and on the basis thereof it made the finding that the fees exceeded the costs of regulation only "by a modest 18 to 36%"; it concluded that the fees were not unreasonably high, that they were lawfully imposed under the authority of *N. J. S. A.* 40:48-1, 2 and that consequently the single prayer in the fifth count of the plaintiffs' complaint, seeking that they be set aside and declared invalid, must be denied.

Chapter 48 of Title 40 provides in its first section (*N. J. S. A.* 40:48-1) that a municipality may adopt ordinances which regulate and control the construction of buildings within the municipality; and *N. J. S. A.* 40:48-2 provides that a municipality may adopt other ordinances necessary to protect the public or necessary to carry out the powers and duties conferred by Chapter 48. Unlike *N. J. S. A.* 40:52-1, 2 which deals specifically with municipal licenses and contain an express reference to license fees "imposed for revenue," *N. J. S. A.* 40:48-1, 2 contain no suggestion whatever that nonlicensing fees imposed in the course of the regulation of building construction may be fixed at a level designed to obtain revenues beyond those reasonably required to defray the actual costs of the regulation. Indeed, even when construing *N. J. S. A.* 40:52-1, 2, our courts have stressed that their goal was primarily to authorize the regulatory licensing of local businesses for the protection of the public, and only incidentally to impose on such busi-

nesses "license fees for revenue which may, at least within reasonable limits, exceed the regulatory costs." See *Salomon v. Jersey City,* 12 *N. J.* 379, 390 (1953); *cf. Nelson Cooney & Son, Inc. v. Tp. of So. Harrison,* 57 *N. J.* 384 (1971); *Garden State Racing Association v. Cherry Hill Township,* 42 *N. J.* 454 (1964); *Bellington v. East Windsor Tp.,* 17 *N. J.* 558 (1955).

In *Daniels v. Borough of Point Pleasant,* 23 *N. J.* 357 (1957), this Court struck, as unreasonably high, building permit fees which had been imposed by the Borough of Point Pleasant under the authority of *N. J. S. A.* 40:48–1. Prior to 1956 the borough had provided for graduated building permit fees based on valuations. Thereafter the borough amended its ordinance to provide that the fees on new dwellings would be 25 cents per square foot of floor area with a $200 minimum per dwelling. Before the amendment the building permit fees payable by the plaintiff-developer were considerably lower than those payable after the amendment. In the year prior to the amendment the borough's building permit fees aggregated $8,875; half of that sum was used by the borough to pay the building inspector's compensation for "inspecting the buildings, etc. and the other half was retained by the borough." 23 *N. J.* at 359. The Court noted that the building inspector had no subordinate employees although he did receive incidental assistance from the borough clerk, the borough attorney, the tax assessor and the tax collector; it described this assistance as "minimal." 23 *N. J.* at 360.

The borough contended that it had the right not only to charge fees to defray actual costs of regulation but also to include in the fees "an amount to defray the costs of government resulting from the building of the new buildings." This contention was flatly rejected in an opinion by Chief Justice Vanderbilt which, after citing *N. J. S. A.* 40:48–1, pointed out that while the municipal power to regulate building construction carried with it the inherent power to charge permit fees designed to defray the costs

of such regulation, the fees must not exceed "the bounds of reason considered in connection with the service and the cost of the service granted." 23 *N. J.* at 361. The principles expressed in *Daniels* have been adhered to in later cases in our courts. See *Moyant v. Paramus,* 30 *N. J.* 528, 546 (1959) ; *Konya v. Readington Tp.,* 54 *N. J. Super.* 363, 368–369 (*App. Div.* 1959) ; cf. *Economy Ent., Inc. v. Tp. Com. of. Manalapan Tp.,* 104 *N. J. Super.* 373, 379–380 (*App. Div.* 1969) ; see also Hall, J. in *Nelson Cooney & Son, Inc. v. Tp. of So. Harrison, supra,* 57 *N. J.* at 390 n. 4:

> *N. J. S. A.* 40:52–1 covers a large number of businesses and instrumentalities used therein as the permitted subjects of municipal licenses. Essentially all are also proper subjects for police power regulatory ordinances, authorized by *N. J. S. A.* 40:48–1 and 2. But the latter power does not include the right to require a license; and the inherent right to charge a fee in connection with a purely regulatory non-licensing ordinance has been said to be limited to an amount primarily designed to defray the costs of regulation. See *Daniels v. Point Pleasant,* 23 *N. J.* 357, 361 (1957) ; *Edwards v. Mayor and Council of Borough of Moonachie,* 3 *N. J.* 17, 21 (1949).

█ We are satisfied that, in the light of the principles set forth in *Daniels,* the Law Division erred when it adopted the Township's accountant's sweeping approach and made its finding of reasonableness on the basis thereof. Surely the Legislature, when it enacted *N. J. S. A.* 40:48–1 and omitted any reference therein to fees for revenue, never contemplated that building, plumbing and electrical permit fees could be fixed by the municipality in so high an amount as to defray not only the budgetary and recognizably related expenses of administering the building, plumbing and electrical regulations, but also portions of the overall costs of administering the many traditional municipal offices, such as the Township Council's offices, the Mayor's office, the Clerk's office, the Attorney's office, etc. In *Merrelli v. City of St. Clair Shores,* 335 *Mich.* 575, 96 *N. W.* 2d 144 (1959), the Supreme Court of Michigan had occasion to deal with an accounting effort comparable to that made by the Town-

ship here in support of its schedule of fees; the Michigan court, in an opinion which relied heavily on *Daniels,* unanimously rejected the effort. 96 *N. W. 2d* at 149–151.

In *Merrelli* the city increased its building permit fees and as a result the aggregate fees received by the city almost trebled without any corresponding increase in the costs of running the building department. When an attack was made on the new fees, the city's fiscal expert interviewed personnel in the various city departments (as did the Township's accountant in the case at hand) and obtained their estimates as to the time spent by them in connection with building activities. The city treasurer estimated that ten per cent of his time was so spent and other city officials gave their varying estimates on the basis of which the fiscal expert allocated extensive indirect costs to the administration of the building regulations. The court, while declining to accept the city's justification for the increased fees, did point out that building fees need not be confined strictly to direct costs, such as salaries of inspectors, but could include some indirect costs, cautioning, however, that "they must in fact be such indirect costs, as distinguished from the costs of expanded government services, and they must be established by reasonably accurate accounting procedures and not as is sometimes the case in the figures before us, by mere 'guestimate' (the word is that of a witness) unsupported by other than speculation." 96 *N. W. 2d* at 150. In its ultimate disposition the Michigan court remanded the matter to the trial judge with leave to the city to present any additional testimony which was properly grounded and bore on the reasonableness of its increased building permit fees. 96 *N. W. 2d* at 151; *cf. University Custom Homes, Inc. v. Township of Redford,* 355 *Mich.* 606, 96 *N. W. 2d* 151 (1959).

In *Bon Air Estates, Inc. v. Village of Suffern,* 32 *A. D. 2d* 921, 302 *N. Y. S. 2d* 304 (1969), the plaintiff instituted a declaratory judgment proceeding seeking to have the Village's building permit fees declared invalid as excessive. His

complaint was dismissed but the dismissal was reversed on appeal. The appellate court pointed out that a building fee should bear a direct relation to the cost of the governmental service involved, that it may not amount to a tax under the guise of a permit, and, citing *Daniels, supra,* 23 *N. J.* 357, that where the permit fee far exceeds the cost of administration the conclusion to be drawn is that "the fee is in reality a tax." 302 *N. Y. S. 2d* at 307. The matter was remanded for additional trial proofs as to whether there would in fact consistently be "a substantial excess of building permit fees above the costs of administering the ordinance and building code, whether there are any additional costs suffered by other agencies of the local government in administering the ordinance and building code, and whether there is any intent on the part of the Village to use the ordinance as an income-producing device or whether any excess is merely incidental to the regulatory aspect of the ordinance." 302 *N. Y. S. 2d* at 307. *Cf. Blower v. Alside Homes Corp.,* 90 *Ohio Abst.* 516, 187 *N. E. 2d* 636 (*Ct. C. P.* 1963).

On the remand called for earlier in this opinion, the Law Division will reconsider its findings under the fifth count in the full light of the foregoing controlling principles. It will bear in mind that the calculations by the plaintiffs' witness did not include many indirect costs which he admitted were recognizably and reasonably related to the costs of operation of the Township's building, electrical and plumbing departments, along with its Planning Board, whereas the calculations by the defendant's witness included many indirect costs which were, under *Daniels, supra,* 23 *N. J.* 357, not fairly related to such costs of operation within the legislative contemplation of *N. J. S. A.* 40:48–1. On a studied view of the record as supplemented by such additional testimony as may be introduced by the parties, the Law Division will determine whether the fees imposed were reasonable and designed to defray regulatory costs or unreasonable and designed to obtain revenue. In the event of the latter finding the plaintiffs may then apply to the Law

Division for a determination as to the amount of the excess charges and for reimbursement upon a showing that they were not passed on to purchasers; if, as is likely, they were passed on, then any recoveries by the plaintiffs would justly be placed in trust under suitable directions awaiting formal claims by the purchasers or escheat in the event of abandonment by them.

Remanded for further proceedings in the Law Division in conformity with this opinion.

*For remandment*—Chief Justice WEINTRAUB, Justices JACOBS, PROCTOR, HALL and MOUNTAIN, and Judge CONFORD—6.

*For affirmance*—None.