127 N.J. Super. 574 (1974)
318 A.2d 435
BEECH FOREST HILLS, INC., AND MORCAL, INC., CORPORATIONS OF NEW JERSEY, PLAINTIFFS-APPELLANTS,
v.
BOROUGH OF MORRIS PLAINS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted December 17, 1973.
Decided April 8, 1974.
*577 Before Judges HANDLER, MEANOR and KOLE.
Messrs. Halberstadter and Halbertstadter, attorneys for appellants (Mr. Sanford Halberstadter, of counsel and on the brief).
Mr. John E. Hughes, attorney for respondent.
The opinion of the court was delivered by KOLE, J.S.C., Temporarily Assigned.
Plaintiffs-landowners (hereinafter plaintiff) appeal from a judgment awarding them compensation, purportedly in accordance with Lomarch v. Mayor of Englewood, 51 N.J. 108 (1968). The events in the case arose prior to that opinion.
Our review of the record below satisfies us that, except as hereinafter stated, essentially the court's findings and conclusions are adequately supported by the evidence and the applicable law. Thus, we find no basis for disturbing, among others, its findings that the planning board or borough had not acted in bad faith and did not intentionally seek to deprive plaintiff[1] of the use of its land without just compensation prior to the express reservation of the park *578 area made on October 5, 1966; that the fair market value of plaintiff's property so reserved for park purposes was $175,000 between the period October 5, 1966  October 5, 1967; that, except for real property taxes, all expenses and other damages claimed by plaintiff should not be awarded, and that the appropriate period for determining the amount of compensation to be allowed is the one-year period of the actual reservation set forth in the final subdivision approval of October 5, 1966. We, however, do not agree with the court that the 6% rate of return on the fair market value of the property is a reasonable measure of just compensation under the facts and, accordingly, have made our own finding with respect thereto. State v. Johnson, 42 N.J. 146, 161-162 (1964).
We will set forth those facts found by the court below and otherwise disclosed by the record that are material to our disposition of the appeal.
Application for preliminary approval of the subdivision was made April 29, 1964. It was proposed that the premises in question be subdivided into 25 building plots.
After a regular meeting of August 11, 1964, in which Mr. Cali, plaintiff's principal participated, the planning board, on August 18, 1964[2], by resolution gave preliminary subdivision approval. In accordance with a suggestion of Cali at the August 11 meeting, the August 18 resolution stated, among other things, that it was understood by the applicant that the borough was interested in purchasing a portion of the land and that the granting of the preliminary approval *579 would not affect its value; that the determination of such value would be made as if no application for subdivision approval had been filed; that no improvements would be installed in the proposed park area for a period of six months from the date of approval, and that the approval would not preclude the planning board from amending the master plan to reserve the land for park purposes. As indicated by the court below, the purpose of the six month period agreed upon was to enable the parties to agree upon a price for the borough's purchase of the property.
No definitive action was taken by the municipality until after the six months had expired. At a meeting of the planning board of February 9, 1965 Cali and his attorney questioned whether the land would be used for park purposes or would be acquired by condemnation within a year. Cali, however, agreed to give the planning board until the meeting of March 9, 1965 to determine what course of action it wished to pursue with respect to the proposed park land. Notwithstanding the objections of the plaintiff and its counsel, the master plan was revised on March 9, 1965 to indicate that the land in question was being reserved for park purposes. At that meeting plaintiff's attorney advised the board that, in his opinion, if the master plan amendment were effected and litigation ensued, either the amendment or the existing subdivision ordinance requiring improvements to be made before final subdivision approval would result in confiscating his client's land. There was also a discussion indicating that plaintiff, upon a showing of hardship, might obtain relief from the prior improvements portion of the ordinance when it applied for final subdivision approval.
On October 5, 1966 final subdivision approval was granted by resolution without requiring the installation of the improvements otherwise required by the ordinance, "it being understood that said final approval shall be solely for the purpose of allowing the statutory period of one year to commence running" as to park lands reserved thereon by the borough so that it could purchase or otherwise acquire the *580 property pursuant to N.J.S.A. 40:55-1.20. The resolution further provided that the final subdivision map would state that the owner did not thereby intend to dedicate the land to public use.[3]
On August 17, 1967 a borough ordinance was adopted providing for the acquisition for park purposes of two tracts of land, one of which was that of plaintiff. After its rejection at a referendum on November 7, 1967, the ordinance was rescinded on December 14, 1967. On January 9, 1968 plaintiff appeared before the planning board requesting, among other things, an extension of time to comply with the requirement that it install improvements within one year before final approval. On March 12, 1968 the board extended the improvements period to October 5, 1968, thereby in effect not charging plaintiff with the one-year reservation made October 5, 1966.
Lomarch was decided on January 22, 1968, after plaintiff's request for the extension but over two months before it was granted by the board.
The complaint was filed on November 5, 1969 seeking damages by way of just compensation under the New Jersey *581 and Federal Constitutions, as well as "incidental damages." It claims that, although the statute established the right of the municipality to reserve lands for a period of one year after final subdivision approval, defendant, through delays and other devices, precluded the final subdivision of the land and the utilization thereof for a period of approximately three years. It further alleges that by reason of the reservation plaintiff was required to install a road at greater expense in order to develop the building lots adjacent to the reserved land; was delayed in developing the land; was obliged to duplicate construction work, engineering, planning and sales promotion, and to pay interest and taxes for an extended period of time, while being precluded from utilizing its land; and suffered other damage.
Although the borough filed an answer, its failure to answer interrogatories resulted in an order suppressing its defenses.[4] The court later refused to vacate this order but in so doing specifically found that there was no contumacious conduct by defendant borough. By order of December 14, 1971 it entered a default and provided for the method of trying the issues at the hearing on the entry of a default judgment. It permitted defendant to cross-examine plaintiff's witnesses with respect to issues of liability; precluded the defendant from offering any evidence on liability, and permitted defendant to participate by way of cross-examination and offering evidence on the question of damages.
Plaintiff contends that in adopting this procedure the court committed error. We disagree. The court properly exercised its discretion in this respect. Reilly v. Perehinys, 33 N.J. Super. 69 (App. Div. 1954); Douglas v. Harris, 35 N.J. 270 (1961); Interchemical Corp. v. Uncas Printing & Finishing Co., Inc., 39 N.J. Super. 318 (App. Div. 1956); Fox v. Fox, 76 N.J. Super. 600 (Ch. Div. 1962); Perry v. Crunden, 79 N.J. Super. 285 (Cty. Ct. 1963); Johnson v. Johnson, 92 N.J. Super. 457 (App. Div. *582 1966); Metric Investment, Inc. v. Patterson, 98 N.J. Super. 130 (Law Div. 1967), aff'd 101 N.J. Super. 301 (App. Div. 1968); R. 4:43-2(b). See also, Annotations, 8 A.L.R.3d 1070 (1966) and 15 A.L.R.3d 586 (1967).
Lomarch's option concept injected a novel problem of proof as to market value. As the record below plainly shows and the court found, none of the experts was able to appraise the fair market value of an option, never having encountered this type of situation before. The difficulty in thus determining just compensation, as well as the court's finding that defendant's conduct was not contumacious, amply justified the proof procedure used below. Thus, there is no substance in plaintiff's argument that defendant was afforded special consideration because of its status as a municipality and plaintiff was thereby deprived of due process and equal protection of the laws.
Plaintiff argues that the taking took place over three years ago and it should be awarded just compensation, including consequential damages, for that entire period. We find no merit to the argument.
Plaintiff had consented to the delay until March 9, 1965 to permit acquisition of the land for park purposes. Hence, it cannot claim a taking or damages up to that date. Its subsequent inaction, except for voicing objections and impliedly threatening to sue for confiscation of its property at the March 9, 1965 meeting, constituted acquiescence by it in the procedure adopted by the municipal officials at and after that meeting. Any delay thereafter was a consequence of that inaction and the course it voluntarily chose to pursue. Additionally, the borough officials were found to have acted in good faith. Thus, there is no basis for concluding that plaintiff is entitled to damages, either by way of just compensation for an eminent domain taking or otherwise, alleged to have resulted from municipal action occurring prior to October 5, 1966, the date of final subdivision approval. See Gregory Manor v. Clifton, 53 N.J. Super. 482 (App. Div. 1959); Woodside Homes, Inc. v. Morristown, 26 N.J. 529 *583 (1958); Colonial Oaks West, Inc. v. East Brunswick Tp., 61 N.J. 560, 566 (1972); Lake Intervale Homes, Inc. v. Parsippany-Troy Hills, 28 N.J. 423, 430-431 (1968); Yardville Estates v. Trenton, 66 N.J. Super. 51, 63 (App. Div. 1961); Brazer v. Mountainside, 55 N.J. 456 (1970); West Park Ave. Inc. v. Ocean Tp., 48 N.J. 122 (1966); S.S. & O. Corp. v. Bernard Tp. Sewerage Authority, 62 N.J. 369, 387 (1973); Deerfield Estates, Inc. v. East Brunswick Tp., 60 N.J. 115, 131 (1972); J.D. Land Corp. v. Allen, 114 N.J. Super. 503 (App. Div. 1971). See also, generally, E. Rutherford Industrial Park v. State, 119 N.J. Super. 352 (Law Div. 1972); Jersey City Redev. Agency v. Bancroft Realty Co., 117 N.J. Super. 418 (App. Div. 1971).
We have noted plaintiff's charges of arbitrary delays and conduct by the municipal officials in connection with the park reservation and the obtaining of a subdivision approval that would permit it to build. But these are business risks that a builder must assume unless, instead of acquiescing in the municipal action, it seeks an early judicial declaration that such action is illegal. Practical and economic considerations may make that procedure inadvisable from the builder's standpoint. But where, as here, there is no showing of knowingly unlawful conduct by the municipal officials, these considerations do not dispense with the necessity of seeking such relief before a claim for damages beyond those authorized in Lomarch may be sustained against the municipality. Under such circumstances, the municipality is entitled to a decision on the legality of its official action before the event rather than to be burdened thereafter with an unresolved claim. See Colonial Oaks West, Inc. v. East Brunswick Tp., supra, at 61 N.J. 566-567; West Park Ave., Inc. v. Ocean Tp., 48 N.J. supra at 130; Deerfield Estates, Inc. v. East Brunswick Tp., supra; Lake Intervale Homes, Inc. v. Parsippany-Troy Hills, supra; Gregory Manor v. Clifton, supra. See also, 9 McQuillin, Municipal Corporations (3d ed. rev.), § 26.98.
*584 The taking here occurred on October 5, 1966, the date of final subdivision approval. Lomarch indicates the temporary nature of the taking and governs the measure of compensation therefor where, as here, the proposed municipal acquisition does not take place. Under the statute, N.J.S.A. 40:55-1.20, since the borough had not purchased or instituted condemnation proceedings for the reserved park land by October 5, 1967, plaintiff was no longer bound by the reservation and the temporary taking was terminated as of that date. The delay occasioned by the November 7, 1967 referendum and the rescission on December 14, 1967 of the park land ordinance is beyond the compensable option period. The court below correctly limited the damages for the taking to the value of an option for the property for one year after October 5, 1966, together with real estate taxes paid during that time.
Since under the proofs there was no better method available for evaluating the option here involved, the court below sensibly adopted the "most feasible approach" of appraising the market value of the land and then allowing a fair return on the value thus found. State v. Willett Holding Co., 62 N.J. 59, 72 (1972); State v. Mehlman, 118 N.J. Super. 587, 591 (App. Div. 1972). This approach, as indicated by plaintiff's expert Boyle, in effect results in a determination of the reasonable rental value of such property during the applicable period. See United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311, 156 A.L.R. 390 (1945); United States v. Petty Motor Co., 327 U.S. 372, 379, 66 S.Ct. 596, 90 L.Ed. 729 (1946); United States v. Westinghouse Elect., etc., Co., 339 U.S. 261, 70 S.Ct. 644, 90 L.Ed. 816 (1950). See also, Almota Farmers Elevator & Whse. Co. v. United States, 409 U.S. 470, 93 S.Ct. 791, 795, fn. 2, 35 L.Ed.2d 1 (1973).
Both the valuation of the land and the return therefrom must take into account the use for which it has a commercial value in the immediate present or reasonably in the near future. State v. Gorga, 26 N.J. 113 (1958).
*585 Plaintiff's property and the return therefrom had to be valued as subdivided lots. This use was considered by the court below in arriving at a land value of $175,000 for the period of one year involved. There is substantial evidence supporting that determination. See Trenton v. Lenzner, 16 N.J. 465 (1954), cert. den. 348 U.S. 972, 75 S.Ct. 534, 99 L.Ed. 757 (1955); State v. Mehlman, supra, at 590.
We conclude, however, that the court below did not take into account the use to which the land reasonably could be put when it adopted a 6% per year rate of return. The experts' proofs ranged from a return of 6% to 11%, exclusive of taxes, insurance and administrative costs. Boyle, plaintiff's expert, testified that the net yield should be 10%. Our review of the record, in light of the property's use, satisfies us that the proper net return is 9% per year. We so find in order to arrive at a just result. State v. Johnson, supra; State, by Comm'r of Conservation v. Vacation Land Inc., 92 N.J. Super. 471, 478 (App. Div. 1966); State v. Wemrock Orchards, Inc., 95 N.J. Super. 25, 32 (App. Div. 1967), certif. den. 50 N.J. 92 (1967).
We agree with the court below that neither principal nor interest on mortgages on the land is an element of compensation under Lomarch or in the present factual context. The land value found by the court was based on unencumbered property purchased at a fair market price for cash. The return we allow thereon is likewise based on a cash sale. This represents the full value of the option here involved. Thus, principal and interest paid on mortgages encumbering the land because plaintiff did not buy it entirely for cash is of no relevance in determining the worth of the option.
The court correctly refused to award the legal and accounting fees claimed as part of the carrying charges of the property, since the proofs thereof were inadequate. We express no view as to whether such charges are part of the compensation allowable under Lomarch as part of the option price.
*586 Plaintiff seeks additional consequential damages as part of the just compensation due it for the temporary taking: (1) the damage and cost of remedying the damage to plaintiff's remaining lands, including the cost of installing improvements claimed to have been necessitated by the taking "which would not otherwise have been required," and (2) increased costs and loss of business profits  i.e., "damage caused by interruption of plaintiff's business operations directly resulting from the temporary taking of the land which was the business inventory itself." We hold that the damages claimed are not allowable under Lomarch for a temporary taking where the acquisition or condemnation of the reserved property is abandoned and, in any event, they are too speculative to be considered proper elements of just compensation for that kind of taking. See United States v. Petty Motor Co., supra; State v. Williams, 65 N.J. Super. 518, 524-527 (App. Div. 1971); State v. Mehlman, supra; Arlen of Nanuet Inc. v. State of New York, 26 N.Y.2d 346, 310 N.Y.S.2d 465, 258 N.E.2d 890 (Ct. App. 1970). Cf. Englewood v. Veith Realty Co., 50 N.J. Super. 369 (App. Div. 1958); 11 McQuillin, Municipal Corporations (3d ed. rev.), § 32.31; 9 McQuillin, id., §§ 32.92(b), 32.92(c); 6 Nichols, Law of Eminent Domain (rev. 3d ed.), § 26.45; Yonkers, by Kelly, Comm'r of Public Works v. A. & J. Cianciulli, Inc., 117 N.Y.S.2d 792 (Sup. Ct. 1952); E. Rutherford Industrial Park v. State, supra 119 N.J. Super. at 371-373.[5]
*587 The court below awarded interest from October 5, 1967. Under the circumstances here presented we deem it just to allow interest from October 5, 1966, the date of temporary taking, on the value of the option awarded to plaintiff. Jersey City Redev. Agency v. Bancroft Realty Co., 117 N.J. Super. 418, 424 (App. Div. 1971); State v. Nordstrom, 54 N.J. 50 (1969); Duncan Hood Corp. v. Summit, 105 N.J.L. 583 (E. & A. 1929). Cf. Wayne Tp. v. Ricmin, Inc., 124 N.J. Super. 509 (App. Div. 1973).
In view of the foregoing, the computation of the award is as follows: the value of the option for the one year commencing October 5, 1966 is $15,750 (9% of $175,000); the tax reimbursement for the period is $1,039.27; the total amount of the judgment is $16,789.27, together with interest thereon from October 5, 1966 at 6% per annum, and costs of suit.[6] A judgment to that effect shall be entered by the court below. No costs to either party.
NOTES
[1] The court inadvertently referred to plaintiff as "defendants" in making this finding.
[2] The court below erroneously referred to this meeting as occurring on August 11. Plaintiff contends that the August 18 meeting was not public. Apparently this is undisputed. However, no prejudice was suffered by plaintiff by reason of its private nature. Cali was informed promptly of the resolution granting preliminary subdivision approval and thereafter commenced the final planning and development of the project. In any event, at the August 11 meeting he was advised of the substance of the proposed resolution and that there would be a meeting of the board to consider it on August 18.
[3] Lomarch, supra, 51 N.J. 108, involved N.J.S.A. 40:55-1.32, which is part of the Official Map and Building Permit Act, N.J.S.A. 40:55-1.30 to 1.42, inclusive. The present case concerns N.J.S.A. 40:55-1.20, part of the Planning Act, N.J.S.A. 40:55-1.1-1.29. Although there is a distinction between the two statutes (see Kligman v. Lautman, 53 N.J. 517, 534 (1969)), the provisions of N.J.S.A. 40:55-1.20 and N.J.S.A. 40:55-1.32 are so alike that Lomarch is applicable to the present situation.

There does not appear to be any specific provision in the Planning Act similar to that in the Official Map and Building Permit Act, N.J.S.A. 40:55-1.38, providing for board of adjustment or municipal relief where the reservation precludes a reasonable return to the owner unless a building permit is issued. It is arguable that the 1967 amendment to N.J.S.A. 40:55-1.38 (L. 1967, c. 288, § 2) intended such relief where there was a master plan rather than an official map. We need not determine this issue or whether the court below was in error when it concluded that plaintiff could have availed itself of the provisions of N.J.S.A. 40:55-1.38. See Kligman, supra at 535, fn. 2. Our determination is in no way predicated on plaintiff's failure to seek such relief at the municipal level.
[4] Present counsel did not represent the borough at the time of this default.
[5] Plaintiff relies on the principle, generally applicable to condemnation proceedings, that where part of lands is taken, compensation is allowed for diminution in value to the remainder resulting from the taking. State v. Mehlman, supra at 590; State v. Speare, 86 N.J. Super. 565, 572-573 (App. Div. 1965), certif. den. 45 N.J. 589 (1965). In our view, the measure of compensation established in Lomarch for a one-year taking does not contemplate allowing the severance damages awarded in a partial taking. To the extent, if at all, that such cases as Yonkers, by Kelly, Comm'r of Public Works v. A. & J. Cianciulli, supra, appear to suggest the contrary with respect to a temporary taking, we conclude that they are inapplicable to a taking by way of reservation pending acquisition or condemnation under Lomarch.
[6] Although interest on the amount of taxes should be allowed only from October 6, 1967, in view of the nominal amount involved we are awarding interest on the total judgment from October 6, 1966.