**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3420-19

GERARDINA GOMEZ[1] and
JUAN GOMEZ, her husband,

     Plaintiff-Appellants,

v.

ALLISON M. FRITCHE,

     Defendant-Respondent.

_____

          Submitted May 4, 2021 – Decided May 21, 2021

          Before Judges Yannotti and Mawla.

          On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-3014-16.

          Shamy & Shamy, LLC, attorneys for appellants (T.K. Shamy, on the brief).

          Law Offices of Viscomi & Lyons, attorneys for respondent (Mario C. Colitti, on the brief).

PER CURIAM

---

[1] Improperly listed on documents as Geraldina or Geraldine.

Plaintiffs Gerardina and Juan Gomez appeal from a March 17, 2020 judgment entered in favor of Gerardina[2] involving an automobile accident with defendant Allison Fritsche, and awarding Gerardina compensatory damages.[3] Plaintiffs also appeal from a March 27, 2020 order denying their motion for a new trial. We affirm.

The facts of this matter arise from a December 8, 2014 accident, which we discussed in a previous appeal. Gomez v. Fritsche, No. A-3977-17 (App. Div. Sept. 12, 2019), slip op. at 2-11. In that appeal, we summarized the parties' arguments as follows:

> On appeal, defendant argues the trial court committed the following errors: prohibited her from impeaching [Gerardina] on her prior accidents and treatment; permitted the investigating officer to give an opinion on fault; prohibited her from objecting to [Gerardina's] closing argument; and permitted [Gerardina] to make improper remarks during her closing argument. Defendant contends that separately or cumulatively, the errors require reversal. She contends for these reasons, the trial court erroneously denied her motion for a new trial.
>
> [Gerardina] responds that the court properly exercised its discretion when it precluded [defendant] from examining either of the medical experts about her

---

[2] We utilize plaintiffs' first names because they share a common surname. We intend no disrespect.

[3] The jury awarded Juan no damages for loss of consortium.

2

previous accidents and injuries. She emphasizes that the investigating police officer never used the word "fault" when he explained to the jury the conclusions he drew from his investigation. Rather, he did little more than summarize the statement made to him by defendant. [Gerardina] insists her closing statement to the jury does not warrant a new trial on either liability or damages.

[Id. at 11-12.]

We reversed and remanded for a new trial because we concluded the court erred when it: admitted the officer's opinion testimony; barred defense counsel from objecting during plaintiffs' summation; permitted plaintiffs' counsel to disparage defense counsel; and permitted plaintiffs' counsel to "ask[] the jurors to award what they would want as compensation, . . . [and] improperly suggest[] that they should decide [Gerardina's] credibility by considering . . . what their motivation would be for undergoing certain medical treatment in similar circumstances." Id. at 22, 24, 26. We concluded the cumulative effect of these errors warranted a new trial. Id. at 26-27.

In addressing defendant's challenge to the court's ruling prohibiting her from presenting evidence of Gerardina's prior permanent injuries, namely, a medical doctor's report from 1999, we noted such evidence would constitute inadmissible hearsay. Id. at 14. However, we stated: "[W]e have not been asked to review the use for impeachment purposes of statements in the old report

3

attributable to plaintiff. That was not an issue argued to, or addressed by, the trial court." Id. at 15. We further stated:

> Nor have we been asked to address whether the trial court erred in ruling defendant could not impeach [Gerardina] with evidence of the prior accident even if [Gerardina] testified she had never previously been injured. Such a ruling would appear to impede a search for the truth. We fail to discern, for example, why if, hypothetically, [Gerardina] denied prior accidents or injuries, defendant could not question her about events such as the time and location of the previous accident and whether she received certain treatment, without placing the content of a medical report before the jury. In any event, the record before us is not entirely clear on this point. If the trial court intended to bar defendant from commenting on these issues in her opening statement, so that—upon defendant's application out of the jury's presence—the court could rule on the specific issue in the context in which it unfolded at trial, then there was nothing inappropriate about the court's ruling.
>
> [Id. at 15 n.2.]

We concluded defendant could not utilize the medical opinion contained in the old medical report to impeach Gerardina's testimony and could not use the report to cross-examine her treating physician where that doctor "did not rely upon the facts and data in the old report to form his opinion in the present case." Id. at 17.

Prior to the second trial, plaintiffs filed an in limine motion requesting defendant be barred from eliciting evidence of two prior automobile accidents involving Gerardina, which occurred in April 1994 and 2000, and whether she suffered any injuries. Plaintiffs argued the evidence should be barred because defendant's medical expert did not review the medical records related to the accidents, and Gerardina's prior injuries were irrelevant to the injuries she suffered in the December 2014 accident and unduly prejudicial. Plaintiffs filed a second in limine motion to bar defendant from mentioning the prior accidents during opening or summation, and argued the trial court's ruling from the prior trial and our decision in the initial appeal were law of the case.

The matter was assigned to a different trial judge who held a pre-trial conference to address the in limine motions. However, the judge noted "[c]ounsel had indicated to the [c]ourt on the record that [a conference] was in fact not necessary [and t]hat they understood the objections and were ready to follow through with respect to the in limine applications without any further argument or comment by the [c]ourt."

Trial commenced and during his opening statement, defense counsel stated: "The plaintiff was involved in two prior motor vehicle accidents." Plaintiffs' counsel objected and moved for a mistrial arguing defense counsel

violated the in limine ruling. Following a lengthy colloquy with the court, the trial judge concluded defendant could not adduce evidence of the prior accidents on grounds of relevancy, but if Gerardina testified regarding the prior accidents and the injuries she suffered from them, the defense could use this evidence to impeach her.

Because plaintiff had yet to testify, the judge drafted a curative instruction, reviewed it with counsel, and asked "anything you want to say relative to the curative instruction just so that it is preserved for our record, have at it." Plaintiffs' counsel acquiesced to the instruction and stated: "I suspect it's going to be adequate." The judge then read the following to the jury:

> [I]n my preliminary charge to you before we started the trial[,] I had told you that the [c]ourt may have to make certain rulings and give you instructions throughout the course of the trial. This is going to be one of those instructions, okay.
>
> So you have heard a statement from defendant's attorney . . . regarding plaintiff's involvement in prior motor vehicle accidents. The [c]ourt had conclusively determined that those motor accidents had absolutely no relevance to the issues you will decide in this case.
>
> You were not to hear discussion of it because it has no bearing upon the issues in this case. No medical expert that's going to be offered by either plaintiff or defendant in this case in any way relates the prior accidents to plaintiff's present medical condition and as a result it was not to be heard, right.

6

I appreciate that you are human beings, I cannot ask you not to hear what has been said in your presence and that you heard, but I know I can ask you, and I know you will follow my instruction that you are to disregard that information, to not use it for any purpose in your deliberations in this case as it plays no role to the issues you're going to be asked to make a determination on, okay.

Gerardina, Juan, and Gerardina's treating orthopedic doctor who also served as her expert, testified on plaintiffs' behalf. Defendant and an expert in orthopedic surgery testified on defendant's behalf.

During Gerardina's direct examination, she testified she was taken to the hospital following the accident and felt pain on her head, left shoulder, and back. The next day, she saw her primary care physician who told her "the only thing [she] could do was to take medicine like Advil, Motrin or Tylenol, and that if [she] was still feeling pain . . . to go see a specialist." Gerardina was treated by her orthopedic doctor for approximately fourteen months. She testified she was out of work for approximately four to five weeks and went to physical therapy for over six months. She then got "some injections, some needles to see if the pain would go away." The injections eased the pain, but it returned after a few weeks and her doctor told her "to just learn to live with the pain" and gave her tips on how to manage it. Gerardina testified she still experienced pain in her

A-3420-19

neck, lower back, and left shoulder area. Counsel then asked her about the time period preceding the accident as follows: "How about [ten] years prior to the happening of this automobile accident, 2004, . . . were you having any problems with your neck, your lower back or your left shoulder?" Gerardina responded: "No, sir."

On cross-examination, defense counsel confronted Gerardina with the emergency room records from the accident with defendant, which stated: "[P]atient denies neck pain, headaches or head trauma." The following colloquy occurred regarding the time period prior to the accident:

> [Defendant's counsel:] Final question. [Your counsel] asked you if whether you had prior low back complaints or problems since 2004. Do you remember [your counsel] asking you that specific question?
>
> [Gerardina:] Correct.
>
> [Defendant's counsel:] Did you complain of low back to . . . your primary care physician, specifically on April 13, 2011? Do you remember that?
>
> [Gerardina:] Correct.

On re-direct and then re-cross examination the following colloquy ensued:

> [Plaintiffs' counsel]: Ms. Gomez, do you ever remember going to . . . your family doctor, back in 2011 saying that you had back spasms or lower back spasm or pain?

A-3420-19

[Gerardina]: I don't remember. It was a long time. It was a long time ago.

[Plaintiffs' counsel]: Thank you, I have no further questions.

[Defendant's counsel]: One question in response to that . . . . Didn't you answer the question when I asked you earlier . . . , didn't you complain of low back pain to [your doctor] specifically on April 13, 2011, and you said yes. Is that accurate, what you told the [j]ury [earlier]?

[Gerardina]: I don't remember.

[Defendant's counsel]: So now you don't remember?

[Gerardina]: I don't remember.

Plaintiffs' expert opined Gerardina's injuries were sustained as a result of the accident and described her diagnosis and the treatment he provided. Defendant's expert testified there was no indication or need for any operation for Gerardina's condition and she received "excellent treatment."

During his summation, defense counsel highlighted the impeachment evidence for the jury and Gerardina's inconsistent statements. Relevant to the issues raised on this appeal, the defense offered the jury the following:

[Gerardina] testified you may recall during cross examination, [stating:] I had no prior low back complaints since 2004. In fact [plaintiffs' attorney] asked his client that question directly.

9

And then on cross examination you may recall I said, wait a minute, what about your family doctor[?] You actually did complain of low back pain on [April 13, ]2011. And when I asked her that question, she said yes, she admitted it.

But you may recall on redirect from [plaintiffs' counsel], she said well you know what, I really don't remember that now. I'm not quite sure if I did or I didn't. I'm really hazy on that. Ladies and gentlemen that's akin to locking the barnyard door after the horse has already escaped.

The jury found Gerardina forty percent and defendant sixty percent comparatively at fault and awarded Gerardina $8,500 in compensatory damages. The trial judge issued the final order of judgment reducing the award to $5,639.79, conforming it to the parties' comparative share of liability and adding pre-judgment interest.

Plaintiffs moved for a new trial. Plaintiffs' counsel certified a new trial was warranted because defense counsel's statement during the opening violated the prior judge's ruling, which counsel asserted we affirmed, "barring testimony or eliciting any evidence or having the [d]efendant mention in opening or closing statements [Gerardina's] prior automobile accidents which are no[w] almost more than [twenty] years old." In opposition, defense counsel certified he understood he could use the prior injury evidence for impeachment purposes. Defense counsel noted he used the evidence to impeach Gerardina because she

A-3420-19

"testified on direct that she never treated or complained about her head, neck, back or left shoulder pain 'since 2004.'" Defense counsel also noted "plaintiff[s'] counsel opened the door widely [because] on cross, [Gerardina] admitted she actually treated with [her doctor] on April 13, 2011[,] for low back pain" and "recanted that testimony" on re-direct.

The trial judge denied the motion for a new trial and found as follows:

> [H]aving evaluated all of the very thorough written submissions [to] the [c]ourt and as well as the trial record, and looking to the very high standard which is employed pursuant to the rules, and again appropriately employed in that it asks the [c]ourt to set aside the full consideration and deliberation of the jury that has heard the entire matter and that should not be done lightly. And I think that's reflected in the standard that is explicitly set forth in the applicable rule.
>
> Here, the [c]ourt finds that the jury had the opportunity to evaluate the credibility of [Gerardina] and all the testifying witnesses. That the facts in the record bear out with respect to what occurred on cross examination. That the jury was within its discretion to accept or rely on about their ultimate determination with respect to apportionment, liability[,] and damages.
>
> Further, for the reasons that the [c]ourt had previously stated at the time that the motion for a mistrial was made, the [c]ourt does not feel that the statement itself warranted a mistrial, in that the timely and strong curative [instruction] by the [c]ourt could remedy any potential prejudice to the plaintiff[s]. And as the [c]ourt believes now, as I did then, that the instruction was appropriate, and that movant has not

11

demonstrated through clear and convincing evidence that to permit this jury award to stand would result in a miscarriage of justice under the law, the [c]ourt is going to deny the request for a new trial at this time.

I.

Plaintiffs argue the verdict was tainted by defense counsel's reference to the prior accidents during his opening statement and the improper comments contributed to the jury's comparative negligence finding. Plaintiffs assert the curative instruction did not remedy the prejudice and the judge should have granted a mistrial.

Where a party seeks a mistrial because of comments made by opposing counsel during opening statements and the trial court denies the request "[s]uch rulings . . . are discretionary with the trial judge and should not be disturbed absent a showing of an abuse of discretion. . . . In an action involving the misconduct of counsel, a mistrial should not be granted absent a clear showing of prejudice to the opposing party." Amaru v. Stratton, 209 N.J. Super. 1, 15 (App. Div. 1985) (citations omitted).

Furthermore,

[t]he exercise of judicial discretion in a ruling on a motion for mistrial requires:

the appraisal by the trial court of the probable effect of the objectionable

> utterance on a fair trial. It is undesirable that a trial be aborted and that the parties be required to incur the expense attendant upon retrial. By the same token expedition should not be served at the expense of crippling the cause of one party or the other by permitting the intrusion of evidence which will serve to confuse the jury or cause it to reach its verdict by emotion rather than by reason. [Runnacles v. Doddrell, 59 N.J. Super. 363, 367 (App. Div. 1960).]

[Amaru, 209 N.J. Super. at 15.]

Our Supreme Court has stated:

> The decision on whether inadmissible evidence is of such a nature as to be susceptible of being cured by a cautionary or limiting instruction, or instead requires the more severe response of a mistrial, is one that is peculiarly within the competence of the trial judge, who has the feel of the case and is best equipped to gauge the effect of a prejudicial comment on the jury in the overall setting.

[State v. Winter, 96 N.J. 640, 646-47 (1984).]

We have noted a court contemplating a curative instruction should consider three factors: "the nature of the inadmissible evidence the jury heard, and its prejudicial effect[;]" how "an instruction's timing and substance affect its likelihood of success[;]" and whether the jury will be unable to comply with the court's instructions. State v. Herbert, 457 N.J. Super. 490, 505, 507 (App.

Div. 2019).  The Supreme Court "has consistently stressed the importance of immediacy and specificity when trial judges provide curative instructions to alleviate potential prejudice to a defendant from inadmissible evidence that has seeped into a trial." State v. Vallejo, 198 N.J. 122, 135 (2009).

Here, the judge issued a swift and specific curative instruction identifying the offending statement by defendant's counsel and instructing the jury to ignore it.  Moreover, prior to opening statements, the trial judge charged the jury as follows:  "During the course of the trial, you will hear from the attorneys on numerous occasions.  Always bear in mind that the attorneys are not witnesses and what they say is not evidence in the case . . . ."  Considering the jury had yet to hear any evidence when defense counsel made his opening remarks and the substantial evidence presented by both parties, we are unconvinced the jury abandoned the evidence and instead focused on the fleeting comment by counsel.

"The jury is deemed capable of following a curative instruction to ignore prejudicial matter." Williams v. James, 113 N.J. 619, 632 (1989).  The record does not support plaintiffs' contention the jury did not heed the judge's curative instruction, or that it was clear the judge should have aborted the trial because

counsel's comments confused the jury, caused it to reach an improper result, or clearly prejudiced plaintiffs' case.

## II.

Plaintiffs assert defense counsel's mention of Gerardina's prior accidents during his opening disregarded the first trial judge's ruling and our decision in the prior appeal, which were law of the case. We disagree.

The law of the case doctrine "is a non-binding rule intended to 'prevent relitigation of a previously resolved issue.'" Lombardi v. Masso, 207 N.J. 517, 538 (2011) (quoting In re Est. of Stockdale, 196 N.J. 275, 311 (2008)). As we noted, we did not bar outright defendant's ability to rely upon evidence from the prior accident. We held the defense could not cross-examine Gerardina with the medical report of a non-testifying doctor and could not confront her expert with a medical report he did not consider. However, we expressly noted evidence of plaintiff's prior accident and injuries could be used for impeachment purposes. The trial judge recognized this in her colloquy with counsel after plaintiffs' counsel objected during opening statements prior to denying the motion for a mistrial. For these reasons, the law of the case doctrine did not apply.

15

## III.

Plaintiffs assert the difference in the award amounts of the first and second verdicts was the result of defense counsel's opening remark. Plaintiffs argue the award is unjust and warrants a new trial.

Rule 4:49-1(a) states: "The trial judge shall grant the motion [for a new trial] if, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." We apply the same standard as the trial court in our review. R. 2:10-1.

As the factfinder, a jury is free to accept or reject as much or as little of the evidence presented in reaching it determination. State v. Diferdinando, 345 N.J. Super. 382, 399 (App. Div. 2001). As a result, a jury's damages award should not be overturned unless it "shock[s] the judicial conscience." Johnson v. Scaccetti, 192 N.J. 256, 281 (2007). "The judgment of the initial factfinder . . . is entitled to very considerable respect." Baxter v. Fairmont Food Co., 74 N.J. 588, 597 (1977). "It should not be overthrown except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest denial of justice." Id. at 597-98.

A-3420-19

Here, plaintiffs presented fact and expert testimony regarding Gerardina's injuries and damages. Gerardina testified she had no problems with her neck, back, or left shoulder in the ten years preceding the accident in this case. The defense cross-examined Gerardina, challenging her credibility regarding the source of her injuries, their effects on her, and whether she treated for pain to her neck, back, and shoulder before the 2014 accident. The defense also offered expert testimony and presented evidence, including MRI imaging studies, which showed Gerardina's injuries to her neck, back, and left shoulder were preexisting conditions and the injuries she sustained in the 2014 accident were temporary, soft-tissue injuries.

Following summations, the judge gave the jury detailed instructions reminding them the arguments of counsel was not evidence and their decision "must be based solely on the evidence presented and on [her] instructions on the law." The judge instructed the jury on direct and circumstantial evidence, and how to determine credibility. She instructed the jury regarding determining fault and damages based on the evidence presented during trial. The jury apportioned liability and awarded damages as instructed.

The only basis plaintiffs present to support their argument for a new trial is the damages awarded were much less than the initial jury award of $115,000.

However, the jury here was not required to reach the same result as the first jury. There is no suggestion the jury failed to follow its instructions. Our review of the record does not support the conclusion the jury ignored the evidence and instead based its decision counsel's opening argument. For these reasons, we are unconvinced there was a miscarriage of justice warranting a new trial.

Affirmed.

A-3420-19